Good morning, Your Honors. If I may, I would like to reserve three minutes, if that is possible. You may. What's the clock? Thank you, Your Honor. The District Court was presented with several factors supporting substantive unconscionability. Among those were two unilateral and one-sided provisions that Valero's arbitration agreement has, a unilateral modification provision, and a one-sided ability to go outside of arbitration to court for injunctive and equitable relief that was not available to plaintiff. Can you focus on the first one for a second? Is your client an at-will employee? Yes. So what's wrong with a unilateral modification provision in an at-will employment contract? They can change the rules at any time, can't they? That's correct in the sense that I guess I would draw the distinction between what an employee knows about an at-will. An employee knows at-will typically is I'm able to be let go, but he doesn't know the scope of what terms. But so what? As long as notice is given. See, I understand that generally unilateral modification provisions are substantively unconscionable, and I think we've got another one this morning coming up later. But in an at-will employment agreement, I'm having difficulty figuring out why it's substantively unconscionable for the employer to say, we're changing the rules and you can either stay or not stay. You stay here at your own will. I understand the second one is a separate issue, but as to the first one, why is it substantively unconscionable? First, because I think with respect to Valero's agreement, it's not entirely clear that notice would need to be given. So when your honor stated so long as notice was given, I don't think that's entirely clear from their agreement. So secondly, I guess I would focus on what I said earlier, which would be the best argument from our point of view is that the terms could vary so significantly that one would have no idea, whereas in the traditional, and they're not sophisticated employment lawyers or lawyers, whereas if they know the terms of an at-will agreement, they generally know what may change. But that strikes me as a procedural issue, isn't it, as opposed to you're saying as the agreement keeps getting reformatted, somebody may not have a fair chance to know what the changes are. That strikes me as procedural unconscionability rather than substantive. So as to that one, I've got some questions. As to the second one, I think you're on firmer ground. Okay. I think your honor is correct in that certainly that focuses on procedural unconscionability. I guess the argument is, again, it does not appear clear that notice is given for the unilateral modification. With respect to the injunctive and the equitable, that is simply Valero's right to go outside of the arbitration agreement to court to do things that the employee does not have, and there may be a number of reasons an employee would need to get injunctive relief or equitable relief. For instance, in a disability issue, often the primary issue is I just want my workplace changed and modified in some fashion. And I cut you off. Were there other substantively unconscionable provisions in this agreement other than those two? There was, your honor. There is a fee paid, which has previously been held, and certainly Valero argues it's a small fee, but that is not what we look at here. But how much would you have had to pay if you were to go to superior court or federal court? Arguably you could. Certainly the filing fees typically are around $400 to $600 or $400 to $500, but there are mechanisms to allow employees through counsel even to waive those fees if they can show that they themselves are not able to pay, whereas I don't believe there's a mechanism for that here. Does the record reflect what kind of fee Valero has to pay to go to arbitration? I'm not entirely certain of that, but my understanding is they should have to pick up the arbitration fees. So if there's an arbitration, they pick up the arbitrator's fees and your client pays $50? That is correct, your honor. And hasn't the California Court of Appeal found a similar fee not to be substantively unconscionable? Well, we cite to a case where I believe it's a Ninth Circuit case, which fines at $125. I know, but we're stuck with – we can only apply California substantive unconscionability law here unless it's preempted. And hasn't at least one California Court of Appeal decision found a $50 fee okay? I'm not aware of it, but I certainly would assume that there would be – that there's a possibility that that case – And again, go down the rest of the list of your unconscionable conditions. There is also, importantly, two other things, and I can go through each of them. There is a PAGA waiver. Is there a PAGA waiver? What is – read me the PAGA waiver. The – I'm not sure if I can read a specific provision. Well, there's nothing – I've read and reread this agreement. There's nothing in there that waives any PAGA rights, is there? But I can only answer it by saying this, that the district – that the Valero maintained there was a PAGA waiver, that they believe that's how their contract should be interpreted. The arbitrator concluded that as well, and the district court was aware that the arbitrator concluded that there was a PAGA waiver. The arbitrator may be right or wrong, but I don't see a PAGA waiver in this agreement. And I'm not sure – it's the states – in PAGA, you're asserting the states' rights. I'm not sure how you can waive the states' rights to assert a claim. We think that's correct, Your Honor. And, in fact, the recent case of Luxottica v. Saccard that the Ninth Circuit had recently issued – Yeah, but my problem is I don't see a PAGA waiver in this agreement. You're asking us to hold it unconscionable because Valero says it has a PAGA waiver. They may be wrong, but there's no PAGA waiver in this agreement, is there? I don't believe there is specifically, but then that would go back to us arguing whether the arbitrator actually got the award correct. If we – Well, you may at the end of the day say that part of the award can't be confirmed because it's outside the arbitrator's powers. But just focusing on the agreement, do you agree with me there's no PAGA waiver in it? I don't believe that there's a waiver of class actions or a PAGA waiver in the agreement because I believe that – we argue that the arbitrator and the district court got that right. Yeah, and on class actions, unfortunately, the Supreme Court says it's not whether there's a waiver. You have to have an explicit – an explicit permission to bring class actions in arbitration. But as to PAGA, I mean, I think a PAGA waiver would be unconscionable, but I don't see one. I agree that there is no specific language in the agreement that says that you waive PAGA claims. However, the arbitrator concluded there was, and the district court affirms the arbitrator's conclusion that there's a PAGA waiver. And under Oxford Health, we don't really at this point – I mean, one of our arguments is to come back and argue we should go beyond and inquire into what the arbitrator did. But under Oxford Health, assuming we don't go there – I read the arbitrator's ruling also. I don't see anything in it that says there's a PAGA waiver. That is certainly one of the potential issues here. No, but that is my question. Did the arbitrator say there's a PAGA waiver? I'm not entirely certain. The collective action is what we assumed. A PAGA is a type of a collective action. It is also an issue – although we've held it's not a class action for CAFA purposes. But my question is, is there anything in the arbitrator's – I was looking for it. Is there anything in the arbitrator's ruling, the interim ruling that we're here about – the interim final ruling. I have no idea why interim rulings are final. But is there anything in that that says there's a PAGA waiver? I don't believe it says that explicitly, Your Honor. Another issue that would support substantive unconscionability is the conduct of what happened. And the district court makes – the record is confirmed by the district court's almost findings of fact that Valero engaged in some very, we believe, one-sided conduct that was substantive and cut off our rights. They presented 13 decisions of other arbitrations. They presented one that was confidential. The district court concludes that one of them, that they also made a misrepresentation about what was available. Didn't the arbitrator say that – I think it was a she, I may be wrong – paid no attention to them? The arbitrator – you're correct, Your Honor. The arbitrator said that while this was before her, she did not consider it and ruled on bases outside of those documents. So isn't that sort of the same as somebody trying to introduce inadmissible evidence in an arbitration, and the arbitrator says, it's inadmissible even under the relaxed rules of arbitration, I won't consider it? We don't think so because we think that – there was another element to – that there was a denial of our right to do – in fact, to find those opinions as well. So it is not just – it is allowing them to present evidence, and certainly we understand that the arbitrator said she did not consider this, and I guess I would think – But if you discovered them, you wouldn't be able to introduce them either, would you? We would not be able to discover them. Well, no, but if they weren't, you said it would cut off your right to them. If you had access to them, you wouldn't have been able to introduce them either, would you? We – either both sides should not be able to introduce them or no one should. And in this case, no one was allowed to introduce them. They did introduce them. I guess I would argue that it taints the whole process. What Valero did – Well, what it does is – I think what your argument is is that they know – they have access to the information about what amounts are awarded in these circumstances by arbitrators to individual workers, and your client doesn't have access to the information. That's correct, Your Honor. So that makes it not a mutual agreement. That is correct. And I think we argued that briefly in our papers as well. Can I ask you something? What does the fact that it's at-will employment have anything to do with whether the arbitration agreement is unconscionable or not? Since 90 percent of – I think I answered the question as best as I could. I don't believe it is connected.  Correct. I don't believe it's connected. There's no law that supports that conclusion at all, right? I don't believe there is. Is there any case you can cite to us that says that the unilateral ability to change an at-will employee's agreement is substantively unconscionable? Yes. There's lots of cases that say when there's not mutual. Excuse me? Ting v. AT&T potentially, which is a Ninth Circuit case that talked about one-sided. No, we have lots of one-sided ones. I'm wondering whether anybody's ever said – and they may have. Judge Wardlaw seems confident that they have. Tell me if you can cite me a case that says that the ability – the unilateral ability to change an at-will employee's contract makes that contract unconscionable. I would have thought that ability existed without the clause. That's why I'm asking. Unilateral modification? Of an at-will employee's agreement, sure. No, no, of the at-will, but not of the arbitration clause. It's a different issue. I guess I would – Well, if you have a case, let me know about it. I don't know if I have a case at hand, but we would be happy to brief further. I guess I would present this as a counter. Ninety percent or 99 percent of employees in California are at-will. If that's the case, then – if it's tied together, then almost – it sort of suggests that all arbitration agreements, no matter what they do, and how they change it and how radically they change it, might be sufficient. No, let me just separate the issues. The change that's made might be unconscionable. That's a different issue. The question is whether the clause that reserves the right to make unilateral change is itself unconscionable. In other words, if you change an employment agreement to say you must bow down every day when you come into the place, I suppose that's unconscionable. My question is, doesn't every at-will employer have the right to simply change the conditions of employment every day? Well, again, I don't believe there's notice here. And when you first asked me this question, Your Honor, you said if proper – I understood you said that before. We're asking a different question, I think. I'm not sure if I can add more other than what I have. And with respect to the taint in the process, I think if Mr. Wolf and the employees of Valero knew that when they were presented this arbitration agreement that at some point Valero would effectively do whatever it wanted in presenting things to the court, including information it only had access to, I'm not sure if any employee would have signed that or wanted to sign it. It also suggests what further actions are they going to take, because it seems like the U.S. Supreme Court is clearly tending towards arbitrations. But one of our policy arguments would be that when the conduct is like this, combined with the various factors, that it suggests substantive unconscionability. So an employee would not, in my opinion, sign an agreement if they knew that they were going into a procedure where a number of unilateral actions could take place. So they have their at-will employment agreement, and then the arbitration, this dispute resolution program that Valero has is a separate agreement that they sign, that they enter into. But is entering – and I'll give you your three minutes later. Is entering into the contract a condition of employment? It's mandatory. The dispute resolution program, is that a condition of employment? It is, Your Honor. I think it's a take-it-or-leave-it. They must do this, and they were doing this while they were employed. So as presently employed employees as well as newly hired employees, they couldn't negotiate this very complex document, which is different than an at-will agreement. Thank you. And we'll hear from the other side. You can have your rebuttal. Good morning, Your Honors. Thomas Kaufman for the defendant, Anna Pelli Valero. I'd like to start by addressing some of the points that you addressed with the appellant. As a first, since it seems I've captured attention of Judge Wardlaw, there is no unilateral modification provision in the sense that I've now asserted my claim in arbitration, and I unilaterally modify the agreement and take it away. If you look at – it's right at page 139 of the excerpts of record. The right to modify the arbitration agreement is quite limited. You have to give notice. I think you have to give 14 days' notice, I believe. And it doesn't apply to any claim where arbitration is already asserted. Right. So let me ask the question. If the – let's assume for a second that the unilateral modification clause is substantively unconscionable with respect to other conditions of employment. You know, we can't make you come in tomorrow and wear red clothes or something like that. Is it – is our focus only on whether it's substantively unconscionable with respect to the arbitration clause? I think your question is whether or not the entire agreement is substantively unconscionable. Right. That's not being contended here, is it? Well, it's unclear, but I don't think so. I think the point of his argument is first that he never agreed to this at all, which I think was not addressed at all. Right. But put that argument aside for a second. This is an attack on the arbitration clause, not the entire agreement. It is an attack on the arbitration clause. Okay. And if it's an attack on the arbitration clause, do we only focus on the substantive unconscionability of the modification provision with respect to that clause? I think so. But, I mean, ultimately, to set aside this as unconscionable, you'd have to have some kind of doctrine that applies generally at any kind of contract. So if you're creating a special rule – Well, but there is a doctrine in California well established outside the arbitration context that says unilateral – reserving – one party reserving the right to unilaterally change a contract in general is substantively unconscionable. You agree with that, don't you? Don't take it as an illusory promise. If I say, like, for example, I can decide after you've done the work I'm not going to pay you for it. Well, but no, there's also stuff that says reserving the right going forward to unilaterally modify a contract – again, put aside the at-will issue – is substantively unconscionable. I think there is only in the context where – that there's not – let me put it this way. In the at-will setting, as long as I give you notice, I can say your pay has been cut 99 percent. I'm assuming it's above minimum wage tomorrow. And I'm giving you 14 days' notice because you're an at-will employee. You can quit tomorrow. So there's no kind of – whether there could be a unilateral modification in a non-at-will setting where I basically take away your vested rights that you bargained for, that's not before you. What's before you is in an at-will employment situation, if I say – if I give you 14 days' notice, I'm going to change as a condition of employment, there will no longer be arbitration. You can decide to quit. Can you address the one-sided equitable relief thing? That strikes me as plainly unconscionable. You can go to court to get equitable relief, but he's got to go to an arbitrator who can't give him equitable relief? Well, I would say a couple things about that. First of all, you can't get complete relief. You can get a temporary halting of the action, which is called for right in the California Arbitration Act in Section 1281.8b. You're allowed to temporarily go and stay something and then have the underlying relief decided in arbitration. So he faces some imminent danger in the workplace. He's going to get injured. He's got to go to an arbitrator? But if he's threatening to leave with company secrets, you can go to a judge? Well, I mean, I would say that if that – The answer is yes, isn't it? It's unclear to me what kind of contract. All his claims have to go to arbitration, and you've reserved some relief only available to you. It's not that you've cut out some claims. I'd understand that. We won't arbitrate something. But you've said all – you're the only ones who can go to court and get equitable relief. Let's assume that's true. Okay. I think it's a subject of interpretation of the contract. But if you just say that's – from the face of it, it's one-sided, then the employer would have the right to temporarily stay something and arbitrate the claim, whereas the employee would not have that right. Let's assume that. If that provision would be severable, if that were a problem, it wouldn't make the entire agreement unconscionable. It would be just one provision that under standard contract interpretation, which you have to follow under the Federal Arbitration Act. You can't get a special rule for arbitration. You would sever it. And it doesn't come up. Nobody has sought to seek injunctive relief in any way in this case. So I think even if you accept that, that that would make – that provision would be unconscionable, I think that's easily severable. And, I mean, I don't think it has anything to do with the underlying dispute here because there's no evidence anybody's ever tried to do that. May I go forward? Okay. The issue about the PAGO waiver, I think you're correct that, number one, there is no PAGO waiver in the agreement. And, in fact – Why did the district court seem to think there was? That's kind of an odd thing, huh? Well, I think what happened, Your Honor, is that there was no mention really made of this PAGO waiver argument in the arbitration. The question at the time, the law was unsettled. There was no Ascanian. There was no Sakab. There was no anything. The question was, does this agreement allow for anything other than individual arbitration? And the court found, we suggested that the court should decide that issue. And the plaintiff argued that was for the arbitrator to decide. And the plaintiff won on that issue, so it got sent to the arbitrator. And then the arbitrator found, based on her view of the law, as if she, that the arbitration agreement only allowed for individual arbitration. That was her finding. The plaintiff cannot come back now and claim, oh, that was for the court to decide. The judge below specifically said, because they took a position, this is an arbitration question for the arbitrator. They won. It got sent to the arbitrator. And now they're trying to argue, actually, it's not for the arbitrator to decide. So what happens to his PAGO claim? His PAGO claim, well. It's not an individual claim. No PAGO claim is an individual claim. It's a representative claim that you're bringing on behalf of the State. Yeah, so is a PAGO claim a collective action that's brought, that the arbitrator can't hear? Or does he retain his PAGO claim to bring after the arbitrator separately? I think, arguably, that's a question for the arbitrator to ask. I mean, I think the arbitrator has made a determination. The arbitrator was presented with a question. Does this allow just for individual arbitration, or does it allow for something broader? Can you bring an action through the State or anybody else? And that question was presented to the arbitrator. She considered the law at the time. No, I guess I'm asking a different question. The arbitrator has said, you can't bring collective claims in this arbitration, right? She said that you can only bring individual claims. Oh, you can bring in individual claims. A PAGO claim is not an individual claim, correct? A PAGO claim, you're acting as a representative of the State. Right. So, therefore, he retains his right to bring a PAGO claim outside the action, correct? I don't know the answer to that, and I don't think that's before you, unfortunately, Your Honor. The question that's before you is whether the arbitrator's award, the PARSH final award, which was you only have the right to go forward individually, whether that somehow violates the very narrow review under the Federal Arbitration Act. Maybe he goes back to the arbitrator and argues that. I don't know. No, I guess I'm focusing now on the judge's reference. This case was ordered to arbitration. Correct. I think, don't we now know the PAGO claim can't be arbitrated? No, we don't know that, actually, Your Honor. How can it be arbitrated? Under Secau versus Bogdanica, they left open the issue of whether. In fact, they said you could do class arbitration. One of their arguments for why it's not preempted is that they thought that unlike a class action, in Secau a PAGO action could be arbitrated. I think the question whether this bars the state or another person from acting as representative of the state, that clearly the state still retains all their rights, and if another employee wants to go and bring a PAGO action, they have their rights. But I thought Iskanian held that you couldn't waive your PAGO claim in an arbitration agreement. The Iskanian claim held that you couldn't waive the right to bring a PAGO claim altogether. They left open the question of whether a PAGO claim could be arbitrated or not. And, again, that wasn't the law at the time the arbitrator made the decision. This question was left to the arbitrator to decide. But I'm still trying to figure out what's the status of his PAGO claim then. He made a PAGO claim in his complaint, right? Our position is that he individually can only go forward with an individual claim. Our position would be if he wants to go and assert a right for PAGO penalties that's just as to violations as to him, we wouldn't object to it. But our position is if somebody else, if he gets a co-worker who comes forward and follows the procedures for PAGO, they're bound by whatever the law is and whether they ultimately can go forward. But he has been decided. Now, he can argue with the arbitrator on something else, but it's not for you. The question is not before you whether or not he can go forward and bring a PAGO claim. That's for the arbitrator to decide. And I believe she's already decided it. If she wants to argue she hasn't decided it, that's for the arbitrator. But if she already has decided it and what's before us is, in effect, the district court figuring out whether to confirm her interim award, isn't that part of the award clearly wrong? I don't think so. We've said PAGO claims can't, you can't waive PAGO claims. Your Honor, the part that I think, the reason why I differ from you is that you have to look at it under the standards that are for the Federal Arbitration Act confirmation. The question is did the arbitrator consider the agreement and was she aware, was she presented with law that was controlling and just ignored it? Not only was that SACAB and Iskanian not the law at the time, it was unsettled, the plaintiff never even argued this to the arbitrator. How can the arbitrator be deemed to have violated law that was never even presented to her? It's a very narrow review and the review is limited to whether she engaged in fraud, and I think there's no basis that she engaged in any kind of fraud, nobody bribed her, or whether she was presented with controlling authority. Or she's acted beyond the powers of an arbitrator. But again, that meaning of acting beyond the powers of the arbitrator is if, for example, there was a claim that was outside of the arbitration agreement that nobody had agreed to arbitrate these claims and she ruled on them. That's what the power, it doesn't mean that subsequently the State finds that some decisions she made was wrong or violated public policy. And also, I mean, even today, SACAB is not even a final decision. I mean, it's still, tomorrow they could be granting en banc review, it's fully briefed and we're waiting for that to happen one way or the other, and it's still subject to Supreme Court review. It's far from an established case, given that it didn't even exist at the time she made her decision. I mean, I understand why you don't want to be in a situation where you're making a ruling that people waive their right to bring POGRA claims. I get that. But I think we have to look at it under the procedure this case is presented to you, which is did the arbitrator violate the rules under the FAA such that you can reverse it? It's a very, very narrow review. And the court recognized this. The court below recognized this, and that's why it confirmed the award. It didn't meet the standards for reversal under the Federal Arbitration Act. So when Mr. Wolf has to pay his $50, who does he pay it to? You know, the agreement doesn't say in its face, but the practice is it gets paid to the arbitration company. Although I would say to you, the arbitrator fee has to get paid by somebody. Ultimately, it's paid. The company pays for the entire amount minus $50. Is that in the record? Yeah, that is in the record. That's what I was asking your opponent. It's right in the ‑‑ they explained right in the dialogue. So you paid the entire amount minus the $50, and so, in effect, you've gotten a $50 credit from his pay? Yes. Okay. And that's approved by Armandera's case, which is a California Supreme Court. I agree with you, Your Honor. If there's no preemption involved, this is a state law issue. The sum of the state law could be preempted. But that question of whether having someone pay a filing fee that is less, as long as it's not exceeding what they pay in court, Armandera's at 24 Cal 4th at page 113 said that's okay, that that's not unconscionable or an unconscionable provision. And the plaintiff also mentioned the Sonic Calabasas case. The Sonic Calabasas case simply says that when you look at the agreement, putting aside, you can't consider anything that would be preempted by the FAA, but looking at the agreement as a whole, does it still allow the person to enforce their individual right to collect their wages? And the arbitration agreement allows it. The dialogue program gives you all the rights as an individual that you would have in court. You get the same remedies. In fact, in some ways it's better because you don't have to ‑‑ you pay less than the filing fee and the company pays all the arbitration-specific fees. Is there any other questions? Do you understand? Do you have any questions? No. I guess the last thing that I would say, because I have a minute left. You don't have to take up all the time. No, I don't think we have to take up all the time. If you have something to tell us, tell us. So the fraud, if it's any concern to you, this whole fraud argument that it's somehow ‑‑ The arbitration agreement says nothing whatsoever about submitting decisions to the arbitrator. We submitted decisions. We provided links. The plaintiff reviewed the decisions as well. But ultimately the arbitrator didn't even consider them. I don't know how the fact that something that's not mentioned in the arbitration agreement ‑‑ But it does seem kind of unfair that your client has access to information that the individual employee does not. You might have access to it as well. It's not like it's from a secret source. It's from the ADR website. Counsel, were those decisions Valero-specific decisions? No. They didn't even involve Valero. No, not at all. And, again, most importantly, I have every reason to take the arbitrator in esteem. She was the presiding justice on the Second District Court of Appeals. It was Justice Cooper. Yeah. She says she didn't even look at them and didn't consider them. I don't know why we should think that that's not ‑‑ I want to follow up on Judge Rice's question because I wasn't clear on that either. These are not arbitrations that you've settled, that Valero has settled, and so you know what this kind of claim goes for. These were decisions from ‑‑ publicly available decisions from arbitrations. A colleague of ours said, hey, I know some arbitration decisions that would be helpful. We looked them up on ADR, and we submitted them to the judge. And then the plaintiff complained. We said, here's links to them. Look at them yourself. And nothing to do with Valero. And, again, the judge just couldn't have even considered them. So I don't know how that could make the arbitration agreement unconscionable. It's not even addressed by the arbitration agreement. Anyway, thank you, Your Honors. I've taken 22 extra seconds. Take them home and save them. Thank you, counsel. Your Honors, I think one of the instructive things is that Valero still maintains that Plaintiff Wolf could only proceed on an individual basis, alone. He cannot bring a collective PAGA action. He confirms that the arbitrator awarded only an individual arbitration. Plaintiff Wolf pled a PAGA action for himself and on behalf of all other aggrieved employees. What do we do with the other thing that your opponent said, which is that they wanted you to argue this issue to the judge, and you wanted to argue it to the arbitrator? Having chosen to argue it to the arbitrator, aren't you stuck at the end of the arbitration trying to argue that she exceeded her powers somehow? If she contravenes case law, she does exceed her powers. There's a Ninth Circuit case, Sakab, that is actually currently a valid case, which at this point means she exceeded her powers. My question is do we review it now or do we review it later? When somebody eventually goes to court to confirm whatever the arbitrator's award is, why can't you just argue then that the award shouldn't include any PAGA claims? Well, the district court also committed, we believe, error because the district court concluded that the arbitrator ordered PAGA claims also waived, that they were waived under the arbitration. So we're looking at the district court. Let's assume the district court's right, that the arbitrator did find them waived, and that was incorrect, that she shouldn't have done that. Is that something we review now or at the end of the arbitration? I think in light of Iskanian, in light of the fact that they were waived. Iskanian just provides us with the substantive law. I'm asking a procedural question. Because the award was in error that that should be reviewed now. With respect to the PAGA claim. Correct. So we could just, we could confirm the arrest, if we thought it was okay, we could confirm the rest of the award but say the award shouldn't include a waiver of any PAGA claims. That is certainly something that we have argued, and we believe that that, at a minimum, should happen. Counsel, doesn't Wolf have half of his PAGA claim, his individual claim? Isn't PAGA made up of two aspects, both the individual's claim and then the claim on behalf of all others? I'm not sure if that's exactly how it works because he got, Mr. Wolf got clearance from the state in a letter that Valero had notice of and could have cured for everyone. Valero, there's a cure provision in that 33-day waiting. Valero chose not to cure it, and once the LWDA allows that cure process to go forward, now we have the right to sue for everyone. What if your client doesn't have, I'm sorry, finish with Judge Rice. This is no longer just an individual claim. We have cleared that hurdle and have been authorized by the state to step into the state's shoes for everyone. Again, Valero could have cured that during the 33-day period and even extended that period out if they wanted to. They chose not to, so that procedural hurdle has been met. With respect to your client's claim, though, let's assume that he fails in the arbitration to prove that there's been a wage and hour violation, which is the underlying sort of claim. Would he still have standing to bring a PAGA claim? I thought in any PAGA action the named plaintiff must have a claim. The representative plaintiff himself must have a claim, so we won't know until the end of the arbitration whether or not your client actually has a claim, will we? I don't believe that's accurate, Your Honor. Do you think you could bring a PAGA action even if you didn't personally have a claim? No, you could bring a PAGA action irrespective of the Labor Code claims. They're two different things. The PAGA action has a private right of action for specific state-only remedies with a specific separate standard of substantial injustice. But don't you have to show that isn't the gravamen of any PAGA claim here the wage and hour violations? In the absence of them, you lose. They can be viewed as intertwined, but they can be completely separate. In other words, we believe you could lose. For instance, Labor Code 226 requires a knowing and intentional crime. We might not be able to maintain that, which is what you're positing. However, we could still win a Labor Code 226.3 violation because substantial injustice might have been found. They're two different standards. What are you asking us to do with respect to the PAGA claim? We would ask that the court, at a minimum of the PAGA claim in light of Iskanian and SACOB order, determine that the district court committed error and order that the PAGA claim can proceed as pled on behalf of all aggrieved employees. That's relying on Iskanian and our recent decision in SACOB? Correct, Your Honor. Even though the arbitrator didn't commit error at the time, you're saying in light of those cases, we need to reverse? Correct, Your Honor. That's what we would do. Were these cases, I haven't checked, extant when the district court confirmed the award? Neither of these cases were extant. They're just recent. In fact, a lot of the cases that we're seeing now, they were waiting for Iskanian to come down because the Supreme Court had said it was going to hear this issue and make a decision. And we had asked the district court to delay its ruling and actually to certify this to allow us because we knew that that was an issue that was pending. I ask a procedural question. Would it make more sense for us then to remand to the district court to reconsider its confirmation in light of those cases? I think that . . . Because there's a strange procedural history in this case which . . . That would certainly be unfair to the district court. You may have some sort of judicial estoppel which hasn't really been argued. You said the arbitrator ought to decide it. Now you're saying the district judge ought to decide it. It seems unfair to tell him that he made a mistake because he did what you asked him to do. Well, but you asked him to delay, right? You asked the judge not to rule until this case . . . That's correct. Where in the record is that? There is a . . . There is a motion we filed with the court, and I don't have it with me, but asking the court to certify this issue for publication to allow the Ninth Circuit to consider it a long time ago, even before the arbitrator made her award. Before the arbitrator's award? Yes. Okay. What do we do with Saqqab if it's taken en banc? Delay it some more? And then what if the Supreme Court takes it? Well, I believe that the present posture of Saqqab is until the Supreme Court actually decides to take it is binding because obviously of the relatively rare . . . That's the current posture of Saqqab. Back to the real issue here, and that's your client, Mr. Wolf. Where's his claim for wage and hour violations? You mean the substantive claims he's raising? Yes. He is alleging meal and rest period violations and a preliminary . . . Where are they, though? Have they been arbitrated, or is everything on hold? Everything is on hold. They have not been arbitrated. And that actually goes to one issue. When Defendant's Counsel was arguing that the plaintiff would have no reason to go to court, that's simply not true. There is a number of, for instance, asking the court for injunctive relief to order that meal and rest breaks are provided, to order payment of time in the Donning and Doffing case, which is very similar to the Tyson Foods case that's being considered by the Supreme Court. So there is, on top of it being a very dangerous work environment and a number of safety-related issues he would have concern over and other employees would. All right. Thank you. All right. Thank you, Counsel. Thank you, Your Honor. I know it's not a normal procedure, but there's a whole point of arrest that I never got to address. I've got to ask about another issue on appeal. Would I be allowed to address that for two minutes? Why don't you submit something in writing? We'll let you submit something in writing. It would be probably more helpful to you anyway. All right. Thank you. Wolf v. Valero is submitted. We'll take up Merkin v. Vonage.
judges: Wardlaw, Hurwitz, Rice